Nicholas Granath, OSB #180295
NICHOLAS GRANATH, ATTORNEY AT LAW, LLC
PO Box 1311
104 SW Dorion Ave
Pendleton, Oregon 97801-2124
Phone: (612) 210-8460
Email: npgranath@icloud.com

Attorney for Defendant *Earl Richard Shamblin*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### MEDFORD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No. 1:22-cr-00078-MC** |
| **Plaintiff,** | |
| **v.** | **SENTENCING MEMORANDUM BY** |
| **EARL RICHARD SHAMBLIN,** | **EARL RICHARD SHAMBLIN** |
| **Defendant.** | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii
I.   INTRODUCTION ....................................................................................................... 1
II.  SUMMARY ................................................................................................................. 1
III. BACKGROUND ......................................................................................................... 1
    A) The Case, Charges, And Offense Conduct: .......................................................... 1
    B) The Plea Bargain Agreement And Mr. Shamblin's Entry Of Plea: ...................... 2
    C) The Offense Of Conviction And Statutory Penalties: ........................................... 3
    D) The Presentence Investigation Report And Mr. Shamblin's Response: ................. 3
    E) Advisory Guidelines Analysis: ............................................................................. 3
    F) Mr. Shamblin's Time In Custody: ........................................................................ 4
    G) Mr. Shamblin Post-Arrest Record: ...................................................................... 4
    H) Any Unresolved Sentencing Disputes At Issue For The Hearing: ........................ 4
IV. LEGAL STANDARD ................................................................................................. 4
V.  ARGUMENT .............................................................................................................. 6
    A) Mr. Shamblin Is Not Subject To Career Offender Enhancement Under New Caselaw,
       The Government Agreed Not To Seek It, And The PSR Does Not Recommend It. .......... 6
       1)  Mr. Shamblin's 2012 Conviction Is An Oregon So-called *Boyd* Offense That Is Not
           A Categorical Match For Career Offender Purposes Under The Recent *Hubbell* and
           *Castillo* Decisions. ........................................................................................ 6
       2)  The 2012 Oregon Statute Of Conviction Is Overbroad Because *Boyd* And Its
           Progeny, Recently Overruled In *Hubbell*, Created A Unique Oregon Crime. . .......... 13
       3)  The 2012 Oregon Statute Of Conviction Is Also Overbroad Because The Statute
           Effectively Criminalized Mere Possession. . ...................................................... 16
       4)  The 2012 Oregon Statute Of Conviction Is No Longer Valid Law Under *Hubbell*
           Meaning That Mr. Shamblin Could Not Be Convicted Under It Post-*Hubbell*. ......... 17
       5)  Pursuant To The Ninth Circuit *Castillo* Decision, Application Note 1 To USSG §
           4B1.2 Should Not Be Read To Include The Inchoate Crime Of Attempt. ................. 17
    B) Disputed Issues With The Final PSR Addressed: ................................................. 18
       1)  A Criminal History Category Of IV Is Inflated By Mr. Shamblin's 2012 *Boyd*
           Offense So A Downward Departure Under USSG § 4A1.3 Is Warranted. . .............. 18
       2)  A Criminal History Category Of IV Is Also Inflated By A Delay In Sentencing Mr.
           Shamblin's 2004 Offense That He Did Not Cause. ............................................... 20
    C) Section 3553(a) Factors And Mitigation-Grounds For A Downward Variance: ............. 21
       1)  Mr. Shamblin Is A Single Parent Of A Young Child Born After His Offense And
           Imprisonment Inevitably Harms His Child. ....................................................... 21
       2)  Mr. Shamblin's History Of Mental Health Issues And Substance Abuse
           Contributed To His Offense But Are Subject To Remedies That Lower His
           Recidivist Risk. ............................................................................................... 22
       3)  Mr. Shamblin Enjoys Strong Family Support That Will Promote His Rehabilitation
           And Lower His Risk Of Recidivism. ................................................................ 23
       4)  The Government's Recommendation Is Greater Than Is Necessary. ...................... 23
       5)  A Straight-Jacket Approach To Applying The Guidelines Leads To Over
           Punishment In This Particular Case. ................................................................. 24
       6)  Left Unadjusted, Inflated PSR Criminal History Categorization Is Grounds For A
           Downward Variance. . ...................................................................................... 25
VI. RECOMMENDATION ............................................................................................... 25

## TABLE OF AUTHORITIES

COURT CASES:

*Gall v. U.S.*, 552 U.S. 38 (2007). ...................................................................5

*McNeill v. U.S.,* 563 816 (2010) ...................................................................14

*Nelson v. U.S.*, 555 U.S. 350 (2009) .............................................................5

*Peugh v. US*, 133 S. Ct. 2072 (2013). ..........................................................18

*Salinas v. United States*, 547 U.S. 188 (2016) ............................................17

*Sandoval v. Sessions*, 866 F.3d 986 (9th Cir. 2017) ...................................15

*State v. Alvarez-Garcia*, 212 Or. App. 663, 159 P.3d 357 (2007) ...............16

*State v. Baker*, 506 P.3d 451, note 1 (Or. App. 2022). .................................17

*State v. Boyd*, 756 P.2d 1276, 92 Or. App. 51 (Or. App. 1988) ............. 8, *passim*

*State v. Fulmer*, 804 P.2d 515 (1992) ...........................................................14

*State v. Hubbell*, 314 Or. App. 844, 500 P.3d 728 (Or. App. 2021) ...............8

*State v Hubbell*, 371 Or 340 (Oct. 5, 2023) ................................. 8, *passim*

*State v. Newsted*, 297 Or. App. 848, 855, 444 P.3d 527 (2019) ..................16

*Tapia v. U.S., 564 U.S. 319 (2011)* .................................................................5

*Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) .......................7

*U.S. v. Castillo*, 69 F.4th 648 (9th Cir. 2023) ...............................8, 10, 17

*U.S. v Crum*, 934 F.3d 963, 964 (9th Cir. 2019) (per curiam), *cert. denied*, 140 S.Ct. 2629 (2020), *overruled, U.S. v. Castillo*, 69 F.4th 648 (9th Cir. 2023) .................10, 13, 17, 18

*U.S. v. Brown*, 879 F.3d 1043 (9th Cir. 2018) ...............................................7

*U.S. v. Castillo*, 69 F.4th 648 (9th Cir. 2023) .............................8, 10, 17

*U.S. v. Cherry*, 487 F.3d 366 (6th Cir. 2007). ..............................................5

*U.S. v. Cuevas-Gomez*, 61 F.3d 749 (9th Cir. 1995) ...................................25

*U.S. v. Diaz*, 2013 WL 322243 (E.D.N.Y.) (unpub.) (January 28, 2013) (Gleeson, J) .............24

*U.S. v. Dossie*, 851 F.Supp.2d 478 (E.D.N.Y. 2012) ...................................24

*U.S. v. Garcia*, 497 F.3d 964 (9th Cir. 2007). .............................................22

*U.S. v. Garza- Juarez,* 992 F.2d 896 (9th Cir. 1993) ...................................24

*U.S. v. Harris*, 679 F.3d 1179 (9th Cir. 2012) ...............................................6

*U.S. v. Lindia*, 82 F.2d 1154 (1st Cir. 1996) ................................................20

*U.S. v. McClelland,* 72 F.3d 717 (9th Cir. 1995) .........................................24

*U.S. v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006) ............................21

*U.S. v. Pauley*, 511 F.3d 468 (4th Cir. 2007) ...............................................21

*U.S. v. Reyes*, 8 F.3d 1379 (9th Cir. 1993) .................................................................25

*U.S. v. Robertson*, 662 F.3d 871 (7th Cir. 2011) .........................................................25

*U.S. v. Sayad*, 589 F.3d 1110 (10th Cir. 2009) ............................................................23

*U.S. v. Searcy*, 233 F.3d 1096 (8th Cir. 2000) .............................................................24

*U.S. v. Smith* (4th Cir. April 22, 2008) 2008 WL 1816564 (unpub.) ...........................23

*U.S. v. Villa-Lara*, 451 F.3d 963 (9th Cir. 2006) .........................................................17

*U.S. v. Wachowiak*, 412 F.Supp.2d 958 (E.D. Wisc. 2006) *aff'd* 496 F.3d 744 (7th Cir. 2097) ...........................................................................................................................23

*U.S. v. Webb*, 139 F.3d 1390 (11th Cir. 1998)..............................................................20

*U.S. v. Willis*, 479 F.Supp.2d 927 (E.D.Wis. 2007) .....................................................23

*US v. MacKinnon*, 401 F.3d 8 (1st Cir. 2005) ...............................................................7

*US v. Vasquez,* No. 09–CR–259 (JG), 2010 WL 1257359, at *3 (E.D.N.Y. Mar. 30, 2010) ........7

STATUTORY AUTHORITIES:

21 U.S.C. § 841(a)(1), (b)(1)(C) ..............................................................................1, 3

# I. INTRODUCTION.

By and through his attorney, Nicholas Granath, defendant Earl Richard Shamblin submits this Sentencing Memorandum before his sentencing hearing with this Court on <u>December 4, 2023, at 11:00 a.m.</u> in Medford Courtroom 2, before Judge Michael J. McShane. (ECF 83). A separate submission filed under seal entitled "Earl Richard Shamblin's Confidential Supplement To The Pre-Sentence Investigation Report" ("Supplement") along with its exhibits addresses matters for sentencing that are not appropriate for disclosure herein. Together these filings constitute Mr. Shamblin's pre-hearing sentencing argument to this Court.

# II. SUMMARY.

Earl Richard Shamblin, 42, of White City, Oregon, is a single parent of a three-year old son. He recently accepted responsibility for one count of distribution of 24 grams of heroin. Mr. Shamblin is a non-violent offender of the controlled substance laws. He has primarily victimized only himself after many years of struggle with his own personal afflictions. Born just *after* Mr. Shamblin's offense, Mr. Shamblin knows that any imprisonment will rob his son of his single parent and at a very formative age. This most powerful motivation to avoid reoffending, together with the reasons set forth below and in the Supplement warrant the sentence recommended below.

# III. BACKGROUND.

## A) <u>The Case, Charges, And Offense Conduct:</u>

The sole defendant in this case, the government first charged Mr. Shamblin by Complaint on February 26, 2021 with five counts of violating 21 U.S.C. § 841(a)(1), (b)(1)(C) for unlawful distribution of heroin. A year later Mr. Shamblin was indicted for the same conduct. (ECF 27). The alleged conduct is distribution of heroin on five different occasions between November 11, 2020 and January 19, 2021, all involving a controlled buy with the same confidential informant.

\

**B)**    <u>**The Plea Bargain Agreement And Mr. Shamblin's Entry Of Plea:**</u>

Mr. Shamblin reached a written plea agreement with the government on August 14, 2023,

pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, which while binding on

the government is not binding on this Court but rather constitutes a recommendation to it. (ECF

85).  The main terms of the plea agreement are as follows:

- A guilty plea to Count I for distribution of heroin and that the remaining counts (II through V) to be dismissed. (*Id.*, ¶¶ 2, 4 ).

- An admission to these facts: "On November 11, 2020, an informant purchased approximately twenty-four grams of heroin from defendant at his recreational vehicle located in Medford, Oregon. After the controlled buy, the substance was tested, and it tested positive for heroin. The controlled buy was surveilled and monitored by law enforcement." (*Id.*, ¶ 5).

- A stipulation that the relevant conduct pursuant to USSG § 2D1.1 is "over 100 grams of heroin, resulting in a Base Level Offense of 24, prior to adjustments." (*Id.*, ¶ 7).

- That for acceptance of responsibility the USAO will recommend a -3 level reduction. (*Id.*, ¶ 8).

- That the government is "*not* seeking a career offender sentence." [emphasis added]. (*Id.*, ¶ 9).

- That the government will recommend a sentence of sixty-six (66) months. (*Id.*, ¶ 9).

- That Defendant reserves the right to seek "any lawful sentence, including a sentence of credit for time served." (*Id.*, ¶ 9).

- That "the government agrees that defendant may appeal designation of the defendant as a career offender under U.S.S.G. § 4.Bl.1 if the District Court sentences defendant as a career offender." (*Id.*, ¶ 12).

Mr. Shamblin's Petition to plead guilty (ECF 86) was accepted and his guilty plea to Count

I entered in a change of plea hearing held before Magistrate Judge Clarke in Medford on September

7, 2023 (ECF 83) in which Mr. Shamblin accepted responsibility for his offense. (*See also*, PSR,

¶ 27).

\

**C)**      **The Offense Of Conviction And Statutory Penalties:**

The offense of conviction is Count I for violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) for distribution of 24 grams of heroin.

The statutory maximum is twenty (20) years imprisonment, a fine of $1,000,000.00, at least three years of supervised release, and a $100 fee assessment.

There is *no* mandatory minimum sentence (hence Safety Valve eligibility is not an issue).

**D)**      **Presentence Investigation Report And Mr. Shamblin's Response:**

On October 12, 2023, Mr. Shamblin participated in an interview with the Presentence Investigation Report writer. (PSR, ¶ 57). The draft Presentence Investigation Report ("PSR") was received on October 30, 2023 and formal objections to it were timely served. The revised final was issued November 22. After consideration of the objections some issues remain unresolved and are addressed herein, *infra* at V B. (*See*, Addendum to Presentence Report, p. 1).

**E)**      **Advisory Guidelines Analysis:**

The parties have stipulated, as set forth in the Plea Agreement, that the applicable offense conduct guideline is § 2D1.1 (table 8) resulting in a base offense level of 24 and that an adjustment of -3 points for acceptance of responsibility should be recommended. (ECF 85, ¶¶ 7, 8). Mr. Shamblin has earned a decrease by demonstrating his acceptance of responsibility and there appears no dispute on this point. Hence, his adjusted score is 21.

The government is bound in the Plea Agreement to recommend not more than 66 months. (*Id*., ¶ 9). That is just above the mid-range of 57-71 months – if a Criminal History category of IV is applied. The parties have not, however, stipulated to a Criminal History score or category. The PSR finds an adjusted offense level of 21 (PSR, ¶ 38) and a criminal history score of 7 points and a category of IV (PSR, ¶ 49), resulting in a guideline range of 57-71 months of imprisonment. However, Mr. Shamblin has objected to this. Mr. Shamblin submits that the proper, straight-

Guidelines calculation – but not what this Court should sentence – is Adjusted Offense Level 21 but at Criminal History Category II, resulting in a range of 41-51 months.

**F)**    <u>Mr. Shamblin Post-Arrest Record:</u>

Mr. Shamblin successfully remained on conditional pre-trial release for a period from April 22, 2021 through November 20, 2023, or for a period totaling about 941 calendar days. In that period Mr. Shamblin was summoned for a handful of violations, it is acknowledged, but these were the product of his underlying addiction, and on some occasions a failure to obtain his prescribed medications (due to a lapse in insurance coverage that occurred without Mr. Shamblin being aware of it until it had occurred).

**G)**    <u>Any Unresolved Sentencing Disputes At Issue For The Hearing:</u>

Following Mr. Shamblin's formal objection to the draft PSR the unresolved issue remaining for this Court is the calculation of Mr. Shamblin's criminal history score for a 2004 federal offense and a 2012 Oregon offense, and hence criminal history categorization. (*See*, Addendum to Presentence Report, p. 1). This issue turns on the scoring of two separate offenses.

## IV. LEGAL STANDARD.

The touchstone of federal sentencing law is the statutory requirement to "impose a sentence sufficient but not greater than necessary to comply with the purposes" set forth in 18 U.S.C. § 3553(a). Those purposes – commonly referred to as the "3553(a) factors" – represent the major sentencing values of "retribution, deterrence, incapacitation, and rehabilitation." *Tapia v. U.S.*, 564 U.S. 319, 325 (2011).

Those familiar 3553(a) factors are: Under (a)(1) the "nature and circumstances of the offense and the history and characteristics of the defendant."; Under § (a)(2)(A) the need to "reflect seriousness of the offense, promote respect for law, and provide just punishment for the offense" and under (B) to afford "adequate deterrence to criminal conduct" and under (C) to "protect the

public from further crimes of the defendant" and last under (D) the need to "provide the defendant with needed educational, vocational training, medical care, or other correctional treatment in the most effective manner."; Under § (a)(3) the "kinds of sentence available."; Under (a)(4) the "kinds of sentence and range set forth in the guidelines."; Under § (a)(5) "any pertinent policy statement by the sentencing commission."; Under § (a)(6) the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."; Under (a)(7) the "need to provide restitution to any victims."

Notably, while § 3553(a)(4) requires consulting the federal Sentencing Commission's Guidelines, since *U.S. v. Booker*, 543 U.S. 202 (2005) those Guidelines are advisory in nature only. "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. U.S.*, 552 U.S. 38, 49 (2007).  Yet "[t]he Guidelines are not only not mandatory on sentencing courts; they are also not to be *presumed* reasonable." *Nelson v. U.S.* 555 U.S. 350, 351 (2009) [emphasis in the original].  Thus, at the § 3553(a) stage, "the issue is not whether the sentence is below the Guidelines, but whether, as it pertains to this defendant and the offenses he committed, the sentence comports with the purposes of § 3553(a)(2)(A)." *U.S. v. Cherry*, 487 F.3d 366, 371 (6th Cir. 2007).  In the end, "sentencing is an art, not to be performed as a mechanical process but as a sensitive response to a particular person who has a particular personal history and has committed a particular crime." *U.S. v. Harris*, 679 F.3d 1179, 1183 (9th Cir. 2012).

## V. ARGUMENT.

**A)** <u>**Mr. Shamblin Is Not Subject To Career Offender Enhancement Under New Caselaw, The Government Agreed Not To Seek It, And The PSR Does Not Recommend It.**</u>

**1)** **Mr. Shamblin's 2012 Conviction Is An Oregon So-called *Boyd* Offense That Is Not A Categorical Match For Career Offender Purposes Under The Recent *Hubbell* and *Castillo* Decisions.**

While the PSR does not recommend a career offender sentence pursuant to USSG 4B1.1, nor does the government seek one in the Plea Agreement, nevertheless we address this issue for two reasons: One, out of an abundance of caution as this Court is not bound by the recommendation in the Plea Agreement, which is made pursuant to Rule 11(c)(1)(B), and; Two, because the issue is a foundation to one of the issues that *is* disputed with the PSR, which is the issue of the criminal history points assigned to the 2012 offense (addressed *infra* at V B 1).  In sum, the Court should not impose a career offender enhanced sentence because:

One, Mr. Shamblin's 2012 Oregon offense, which is one of only two candidates for prior offenses under 4B1.1, is not a categorical match due to recent changes in Oregon and federal caselaw, hence Mr. Shamblin's criminal history lacks "at least two prior felony convictions" as required by 4B1.1(3).

Two, in any event application of the enhancement to Mr. Shamblin, who is a non-violent drug offender, would surely result in a grossly excessive sentence (even if he were eligible), as is well documented by Sentencing Commission reports, sentencing courts, and recently the Attorney General. *See e.g.*, *Fifteen Years of Guideline Sentencing*, p. 133-34 (Nov. 2004)[1]; *Report to the Congress: Career Offender Enhancements*, p. 3 – concluding "Drug trafficking only career offenders are not meaningfully different from other federal drug trafficking offenders and should not categorically be subject to the significant increases in penalties required by the career offender directive." (Aug. 2016)[2]; *e.g. US v. MacKinnon*, 401 F.3d 8, 10 (1st Cir. 2005) (remanding for re-

---

[1] Full report available at: https://www.ussc.gov/research/research-and-publications/research-projects-and-surveys/fifteen-years-guideline-sentencing
[2] Full report available at: https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/criminal-history/201607_RtC-Career-Offenders.pdf

sentencing post-*Booker* after the district court, concluded that the Career Offender Guideline produced an "obscene" sentence "unwarranted by the conduct"); *US v. Vasquez,* No. 09–CR–259 (JG), 2010 WL 1257359, at *3 (E.D.N.Y. Mar. 30, 2010) (observing "street-level defendants" receive the harsh sentences "that Congress intended for kingpins and managers …"); Attorney General *Memorandum for All Federal Prosecutors* re "Sentencing In Drug Cases" (Dec. 16, 2022), p. 3-4 "In a case in which … the defendant's status as career offender is predicated only on the current and previous commission of nonviolent controlled substance offenses, prosecutors should consider supporting a downward variance to the guideline range that would apply in the absence of career offender status."

In terms of the first point, we start our analysis by noting that whether there are "at least two prior felony convictions of either a crime of violence or a controlled substance offense" under 4B1.1(a)(3) is governed by the application of the "categorical approach" set forth in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); *United States v. Brown*, 879 F.3d 1043, 1046 (9th Cir. 2018). And here, save for two, all of Mr. Shamblin's prior convictions are clearly excludable as predicate offenses while the two arguably includable offenses are both controlled substance offenses. (PSR, ¶¶ 41-48).

The first offense, Mr. Shamblin's 2008 federal conviction (Case No. 6:04-cr-60064-AA; *see* PSR, ¶ 46) it is conceded may well count – but the second, a 2012 state of Oregon conviction (Case No. 0121327FE; Jackson County; *see* PSR, ¶ 47), should not for these reasons:

First, examination of the record shows that Mr. Shamblin's 2012 conviction is a classic so-called "*Boyd* delivery" type of drug offense under Oregon law. *See, State v. Boyd*, 756 P.2d 1276, 92 Or. App. 51 (Or. App. 1988).

Second, Oregon law has radically changed since *Boyd*, throwing out the very notion of

*Boyd* deliveries altogether.  This occurred after the commencement of Mr. Shamblin's case starting in 2021 with the Oregon Court of Appeals decision in *State v. Hubbell*, 314 Or. App. 844, 500 P.3d 728 (Or. App. 2021) that directly overruled *Boyd*.  Then, only months ago, the Oregon Supreme Court affirmed.  *State v Hubbell*, 371 Or 340 (Oct. 5, 2023).  As a result, the 2012 conviction is not a categorical match.

Third, while it is true that the Ninth Circuit has held that ORS § 475.890(2), under which Mr. Shamblin's 2012 *Boyd* conviction was made, is a categorical match for a federal controlled substance offense – to date no appellate case has analyzed a challenge to a Career Offender enhancement that considered the new *Hubbell* rulings hence the issue would be one of first impression.  However, very recently the 9th Circuit ruled in *U.S. v. Castillo*, 69 F.4th 648 (9th Cir. 2023) to overrule prior case law and to read 4B1.2 to exclude inchoate offenses listed in Application Note 1.  That is significant because under *Hubbell* Mr. Shamblin's 2012 conviction should now be regarded as merely the inchoate crime of attempt.

Next, we look at the details of 2012 offense.  Mr. Shamblin's March 21, 2012, Indictment was for the following offenses: One count Unlawful Manufacture of Methamphetamine (Class B Felony); One count Unlawful Delivery of Methamphetamine (Class B Felony); One count Unlawful Possession of Methamphetamine (Class C Felony).  The case was resolved by plea agreement.  The resulting November 15, 2012, Guilty Plea and Judgment of conviction entered was on a single count: Count II for Unlawful Delivery of Methamphetamine in violation of ORS 475.890(2).  The resulting sentence was for 24 months imprisonment.  All the remaining counts were dismissed. *See*: **Exhibit 1** ["Judgment of Conviction and Sentence" of November 15, 2012]; **Exhibit 2** ["Probable Cause Affidavit" of March 12, 2012]; **Exhibit 3** ["Medford Police Report" of March 20, 2012].

The statue of conviction for the 2012 offense was punishable for a period exceeding one year as an Oregon Class B felony punishable at a maximum of 10 years per ORD § 161.605 (2011 edition of statutes).  The applicable version of ORS § 475.890(2) is the 2011 version stating:

> Section 475.890 Unlawful delivery of methamphetamine
> (1) Except as authorized by ORS 475.005 to 475.285 and 475.752 to 475.980, it is unlawful for any person to deliver methamphetamine.
> (2) Unlawful delivery of methamphetamine is a Class B felony.
> (3) Notwithstanding subsection (2) of this section, unlawful delivery of methamphetamine is a Class A felony if the delivery is to a person under 18 years of age.
> (4) The minimum fine for unlawful delivery of methamphetamine is $500.

[2005 c.708 §16; 2011 c.597 §13].  *See*, **Exhibit 4** [ORS § 475.890 (2011)].

The applicable version of ORS 475.005(8) defining "delivery" is the 2011 version stating:

> "Deliver" or "delivery" means the actual, constructive or attempted transfer, other than by administering or dispensing, from one person to another of a controlled substance, whether or not there is an agency relationship.

*See*, **Exhibit 5** [ORS § 475.005(8) (2011)].

A statute also relevant for this analysis is Oregon's attempt statute, ORS § 161.405(1).  The relevant portion of 2011 version of that statute stated:

> (1) A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward the commission of the crime.

*See*, **Exhibit 6** [ORS § 161.405(1) (2011)].

Admittedly, on its face, the elements of Oregon's ORS § 475.890 offense has been observed in this Circuit to be "fairly simple." *U.S. v Crum*, 934 F.3d 963, 964 (9th Cir. 2019) (per curiam), *cert. denied*, 140 S.Ct. 2629 (2020), *overruled, U.S. v. Castillo*, 69 F.4[th] 648 (9th Cir. 2023).  However, after the commencement of this case (and even before *Castillo*) Oregon law radically changed with the *Hubbell* rulings throwing-out decades of so-called "*Boyd* deliveries" under ORS § 475.890 together with its included definitions in ORS § 475.005.

Briefly, we next look at the effect of the *Hubbell* rulings.  Starting with *State v. Boyd*, 92

Or App 51, 756 P2d 1276, *rev den*, 307 Or 77 (1988) Oregon courts had begun to construe substantive criminal statutes that relied on the definition of "delivery" of controlled substances – such as found in ORS § 475.005(8) (2011), which included the phrase "attempted transfer" – to include the separate *inchoate* crime of attempt such as found in ORS § 161.405(1) (2011) in the *completed* crime.  This was the germ of error later cured in the *Hubbell* rulings.

In *Boyd* the defendant was charged with delivery of a controlled substance under ORS § 475.992, which simply prohibited "delivery of a controlled substance" (a precursor statute to ORS § 475.890).  This was based on two facts, possession of a significant quantity of heroin and an admission of a general intent to sell such heroin.  In *Boyd* the court cited the definition of "delivery" provided in ORS § 475.005(8), which in 1988 had the same wording as the same statute did in 2011, and in 2012 when it was applied to Mr. Shamblin's case (and is the same wording today). In essence, the *Boyd* court then seized upon the phrase "attempted transfer" in ORS § 475.005(8) to uphold the conviction regardless of the fact there was no transfer of heroin. (*Id*.).  The court then observed that this phrase was not itself defined in ORS § 475.005(8). (*Id*.).  So – without analysis of any kind – the *Boyd* court then arbitrarily applied a *separate* provision of the criminal code, ORS § 161.405(1) that set forth the separate *inchoate* crime of attempt.  The wording of ORS § 161.405(1), at the time of *Boyd* was the same in the 2011 version of the statute (for purposes of Mr. Shamblin's 2012 conviction) and is the same today. The *Boyd* court then held that mere possession along with an admission that "large" amounts of controlled substance were possessed with an intent to later sell constituted evidence sufficient to establish a *completed crime* of delivery of a controlled substance.

In telling *dicta*, the *Boyd* court noted that the state of Oregon was *different* than the federal controlled substance statute in that Oregon did *not* criminalize possession with intent to deliver,

which it conceded was a "distinct crime." (*Id.*).  To make clear that the court was end-running this omission by *conflating* a completed crime with an inchoate one when defining the elements of the completed crime, the *Boyd* court stated: "There is no indication that the Oregon legislature intended to punish an attempt to transfer a controlled substance other than as the completed transfer. It did so without enacting the distinct crime of possession with intent to deliver, because that crime, considering the meaning of 'attempt,' is included in the definition of "delivery." (*Id.*).

A long line of Oregon cases since *Boyd* then upheld what came to be known as so-called "*Boyd* deliveries", i.e. cases where the only element was possession combined with some arguable evidence of general intent to later transfer controlled substances (usually by an admission of an intent to sell but not always). *See e.g.*, *State v. Schwab*, 227 P.3d 1182, 1185 (Or. App. 2010).

But crucial to application of the Career Offender enhancement in Mr. Shamblin's case is the 2021 Court of Appeals decision overruling *Boyd,* and its subsequent affirmance. *State v Hubbell*, 314 Or App 844, 500 P3d 728 (2021), *affirmed*, 371 Or. 340 (Oct. 5, 2023).  The *Hubbell* Appeals Court thoroughly nullified the notion of a *Boyd* delivery crime characterizing it as a veritable freak of criminal law – a true "Oregon oddity":

> In *Boyd*, after observing that "delivery" was defined to include the "attempted transfer" of drugs, we turned – without any examination of the text, context, or legislative history of ORS 475.005(8) – to the meaning of "attempt" that the legislature supplied for the inchoate crime of attempt under ORS 161.405(1). That statute defines an attempted crime by looking to whether the defendant intentionally engaged in conduct that constituted a "substantial step toward commission of the crime." In this way, we defined "attempted transfer" – an *act* – by grafting in the statute for the inchoate *crime* of attempt. And so was born an Oregon oddity, the "*Boyd* delivery," a bootstrapped doctrine where possession of drugs with the intent to sell them constitutes a substantial step toward the crime of delivery and, hence, the attempted crime becomes the *completed* crime of delivery of a controlled substance. *State v. Hubbell*, 500 P.3d at 731.

The *Hubbell* court in a long and thoughtful analysis thus concluded that:

> *Boyd*'s leap – defining the word "attempt" within a substantive statute to be the inchoate crime of attempt – was not just wrong but plainly wrong; it was a statutory interpretation

with "deficiencies [that] are apparent with even a basic exploration of the text and context of the statute, let alone its legislative history." *State v. Civil*, 283 Or. App. 395, 417-18, 388 P.3d 1185 (2017). After employing our usual methodology for construing statutes (something that did not happen in *Boyd*), it is readily apparent that the legislature meant for the word "attempted" in ORS 475.005(8) to capture an unsuccessful transfer, not to combine the inchoate and completed crimes of delivery of a controlled substance. Accordingly, we overrule *Boyd*, apply the ordinary meaning of "attempted" transfer to the record in this case, and conclude that the state's evidence was legally insufficient to prove the crime of delivery of a controlled substance.

*State v. Hubbell*, 500 P.3d at 732.  In its October 5, 2023 ruling affirming, the Oregon Supreme Court not only adopted the Court of Appeals reasoning it also approved remanding the case *for conviction of the inchoate crime of attempted delivery*. 371 Or at 343, n. 1 and 363.

Notably, prior to the Oregon Supreme Court ruling in *Hubbell*, Mr. Shamblin filed a Petition for Post-Conviction Relief (on June 8, 2023) based on the Court of Appeal's *Hubbell* ruling. **Exhibit 7** ["Petition For Post Conviction Relief" filed 8 June 2023].  That case is still pending (Case No. 23cv22928) but now Mr. Shamblin can take advantage of the Oregon Supreme Court's affirmance.[3]

Thus, as further elaborated below, Mr. Shamblin's 2012 conviction is not a categorical match for the generic enhancement offense of either: i) "distribution" [delivery] of a controlled substance *or* ii) of "possession with intent to distribute."

Further, ORS 475.890(2) is indivisible.  For that reason, the "modified categorical" approach is inapplicable.  *See*, *Descamps v. U.S.*, 570 U.S. 254, 278 (2013).  It is not divisible because in the first instance ORS 475.890(2) on its face does not describe more than one crime, it only defines just "unlawful delivery of methamphetamine."  *See*, *U.S. v Crum*, 934 F.3d 963, 964

---

[3] Because the Petition could result in a new sentence based on a conviction of attempt rather than for delivery, thus lowering Mr. Shamblin's criminal history score, sentencing in this case could be deferred.

(9th Cir. 2019) (per curiam), *cert. denied*, 140 S.Ct. 2629 (2020) (observing that ORS § 475.890 is "fairly simple"). Second, because Oregon courts applying *Boyd* looked only to whether there was sufficient evidence of general intent to sell, no finder of fact was required to find this as an element, rather it was a mere *means*. Thus, in one case evidence of admission to sell might be satisfactory while in another evidence of mere preparation to sell was also sufficient. In any case, the statute of conviction is indivisible. (Even if it were divisible *Shepard* type documents clearly show that the client's 2012 conviction was a classic *Boyd* delivery one where possession is the only element plus mere evidence of intent to sell based on the defendant's admission. *Shepard v. U.S.*, 544 U.S. 13 (2005). *See*, <u>Exhibit 2</u>; <u>Exhibit 3</u>.

### 2)    The 2012 Oregon Statute Of Conviction Is Overbroad Because *Boyd* And Its Progeny, Recently Overruled In *Hubbell*, Created A Unique Oregon Crime.

As the extensive analysis in *Hubbell* makes clear, the 2012 prior conviction statute, i.e., ORS § 475.890(2) (including its definition of "delivery" in § 475.005(8)), under the *Boyd* line of holdings improperly merged a substantive or complete offense with a separate offense defining an inchoate crime, i.e., attempt. That central flaw is how the statute of conviction was actually applied in charging, instructing juries – and in sentencing – under the *Boyd* line of holdings. It is this Oregon case law that must inform a sentencing court in Mr. Shamblin's case now in construing for the purposes of a categorical approach the meaning of how the statue of conviction was applied. *See*, *McNeill v. U.S.,* 563 816, 821 (2010) ("we have turned to the version of the state law that the defendant was actually convicted of").

Here, as the *Hubbell* court made clear, *Boyd* and its progeny effectively *warped* the actual application of the statute to taint all aspects of prosecution. *State v. Hubbell*, 500 P.3d at 731 ("Since then, *Boyd*'s holding has influenced not only the way drug crimes have been prosecuted and charged, but [also] how they have been sentenced."). At the time Mr. Shamblin was convicted

and sentence imposed in 2012, *Boyd* was in full effect.  Therefore, the statute he was convicted under must be analyzed under its now flawed *Boyd* construction.

As *Hubbell* makes clear, under *Boyd* the Court erroneously merged an inchoate crime into a substantive completed crime – but not as a lesser included crime – rather as part of the definition of a completed crime. *State v. Hubbell*, 500 P.3d at 731 ("… for the past 30 years, the completed crime of delivery and the inchoate crime of attempted delivery have been treated as *one and the same*, which has had sentencing ramifications for the charged offense and for a convicted defendant's criminal history.") [emphasis added]; *see also*, *State v. Fulmer*, 804 P.2d 515 (1992) ("under *Boyd*, '[a]n attempt to deliver, therefore, constitutes the same crime as a completed transfer'").

Yet there is *no federal counterpart* that does the same.  Under federal law, a completed distribution of a controlled substance offense is not the same crime as an attempt to do so. *Compare*, 21 USC § 481(a)(1) *with* 21 USC § 846.  There is *either* a completed crime or a lessor included attempt; one or the other but not a combination of both.  In short, there is no such thing as a "*Boyd* delivery" offense in the generic definition of the Career Offender enhancement.  That is so because a complete crime and an attempted crime are *not* "one and the same" in the federal controlled substance offense scheme.

No federal statute or case has, like the *Boyd* case did in Oregon courts for over 30 years, merged the inchoate crime of attempt into the completed crime of distribution by mis-construing the phrase "attempted transfer" in the federal definition of "deliver" or "delivery" at 21 USC § 802(8). (Nor does the Controlled Substances Act does define the term "attempt." *Sandoval v. Sessions*, 866 F.3d 986, 989 (9th Cir. 2017) *citing* 21 U.S.C. §§ 802, 846.)

Nor has any federal statute, or case, merged into the substantive offense of possession with

intent to distribute the inchoate crime of attempting to do so.

As a result, the 2012 prior conviction statute in ORS § 475.890(2) under *Boyd* is something that the generic offense (in its completed, substantive form, i.e., for distributing or for possessing a controlled substance with intent to distributive under federal law) – is *not*.  It is something *more*:

On the one hand, under *Boyd*, ORS § 475.890(2) and § 475.005(8) criminalizes more than a completed crime of distribution.  It *must* do so because it criminalizes the inchoate crime of attempt not as a lesser include offense but rather as the completed crime itself.  Hence the *Hubbell* court found that the "real-world consequences of *Boyd* … [are] especially stark." *State v. Hubbell*, 500 P.3d at 742; *see also State v. Hubbell*, 500 P.3d 731 ("As a consequence of *Boyd*, the ordinary hierarchy of offenses in Oregon – that completed crimes are more serious and punished more severely than inchoate crimes, ... – does not hold true for the crime of delivery of a controlled substance.").

On the other hand, the Oregon statute did *not* criminalize possession with intent to distribute (nor did any other Oregon statute), which Federal law does.[4]  But because the only *element* in an ORS 475.890(2) offense under *Boyd* is possession, it falls outside the generic definition in § 4B1.2, which does not criminalize mere possession.

There is no escaping this warped "oddity" of an Oregon controlled substance delivery crime under ORS § 475.890(2) and § 475.005(8) as constituted by *Boyd*. *See, State v. Hubbell*, 500 P.3d at 731.  As the *Hubbell* Appeals Court observed, *Boyd* casts the state of Oregon into an

---

[4] *Hubbell*, 500 P.3d at 749 (noting: "The state's only answer to that question relies, like *Boyd*, on sheer speculation about why Oregon did not include 'possession with intent to manufacture or deliver' in its controlled substances statutes. "); *see also*, *Hubbell* 500 P.3d at 740 ("… the legislature's omission and variance from the UCSA is more indicative of a conscious policy decision *not* to criminalize "possess with intent to manufacture or deliver" as part of the completed crime of delivery.").

"outlier" status in defining the offense of delivery of controlled substances. *State v. Hubbell*, 500

P.3d at 731.

> **3)**    **The 2012 Oregon Statute Of Conviction Is Also Overbroad Because Under *Boyd* And Its Progeny, As Recently Overruled In *Hubbell*, The Statute Effectively Criminalized Mere Possession.**

Under *Boyd,* ORS 475.890(2) required only one element, possession notwithstanding that

the statute itself prohibits "delivery." *State v. Hubbell*, 500 P.3d at 734 ("... the state directed us to

previous cases in which we had affirmed convictions on a *Boyd* theory where there was evidence

of a large quantity of controlled substances, inconsistent with personal use, along with packaging

material). *State v. Newsted*, 297 Or. App. 848, 855, 444 P.3d 527 (2019); *State v. Alvarez-Garcia*,

212 Or. App. 663, 667-68, 159 P.3d 357 (2007).  This is the alchemy of *Boyd*.  In *Boyd* the element

of possession *plus something* else becomes the completed crime of delivery (not the attempted

crime).  Beyond the element of possession, the 'plus' is supplied by mere evidence sufficient to

support some vague, generalized intent to sell controlled substances.  And note that this is evidence

that may be *less than a substantial step* to do so.  Any evidence, such as an alleged admission of

an intent to sell, or packaging, that would indicate a possible sale would do. Under *Boyd*, then,

effectively ORS § 475.890(2) required only one element, possession.  But mere possession is not

a listed offense anywhere in 4B1.2(b).  Consequently, a conviction based on mere possession is

overbroad. *See*, *Salinas v. United States*, 547 U.S. 188 (2016) (simple possession not a controlled

substance offense under § 4B1.2), *see also*, *U.S. v. Villa-Lara*, 451 F.3d 963, 965 (9th Cir. 2006)

(Nevada statute that criminalized "… mere possession of certain amounts of controlled substances

without proof of any trafficking intent …" is overbroad so not a categorical match).

> **4)**    **The 2012 Oregon Statute Of Conviction As Construed In *Boyd* Is No Longer Valid Law Under *Hubbell* Meaning That Mr. Shamblin Could Not Be Convicted Under It Post-*Hubbell*.**

In *Hubbell* the Oregon Court of Appeals expressly overruled *Boyd*. *State v. Hubbell* at 500

P.3d at 732. *See also*, *State v. Baker*, 506 P.3d 451, note 1 (Or. App. 2022). Mr. Shamblin's 2012 prior statute of conviction under ORS § 475.890(2) as construed by *Boyd* and its progeny, is no longer valid law. Therefore, the statute of conviction cannot serve as a prior predicate offense under the rule of lenity. It is fundamentally unfair to count as a crime a prior offense that would *not be a crime today*. Since the *Hubbell* rulings in 2021 and 2023, Mr. Shamblin could not be convicted under that statutory scheme because it has been overruled.

**5)**      **Pursuant To *Castillo*, Application Note 1 To USSG § 4B1.2 Should Not Be Read To Include The Inchoate Crime Of Attempt.**

Another change in the law since the commencement of this case is the recent 9th Circuit ruling in *U.S. v. Castillo*, 69 F.4[th] 648 (9th Cir. 2023), expressly overruling *U.S v Crum*, 934 F.3d 963, 966 (9th Cir. 2019). The *Castillo* panel held that "[t]o the extent that *Crum* and *Vea-Gonzales* hold that an inchoate offense is a "controlled substance offense" for career enhancement purposes under the Sentencing Guidelines, we overrule them." 69 F.4[th] at 644. Thus, any argument that the inchoate crime of attempt is included in the generic definition in 4B1.1 as defined in 4B1.2 should be rejected under *Castillo*, which reverses the *Crum* line of ruling's that in effect pasted Application Note 1 of 4B1.2 into the guideline itself.

Moreover, this result should not change because of the new amendment to 4B1.2 that went into effect November 1, 2023 (i.e. that includes inchoate offenses in the term "controlled substance offense"). That is so because pursuant to 1B1.11(b)(1) the new amendment to 4B1.2 would violate the *ex post facto* clause by exposing Mr. Shamblin to enhanced penalties, hence the Guidelines in effect on the date of offense of conviction (as interpreted by *Castillo*) should be used rather than the Guidelines in effect on the date of sentencing (or alternatively, the Court should grant a variance to impose the benefit of *Castillo*). *See*, *Peugh v. US*, 133 S. Ct. 2072, 2078 (2013).

**B)**    **Disputed Issues With The Final PSR Addressed:**

The "Addendum To The Presentence Report" issued as part of the Final RSR on November

22, 2023 noted the "Unresolved Objections By Defense Counsel":

> **Sentencing Recommendation (Criminal History Category) and Paragraphs 46 and 47:**
>
> Defense counsel objects to the application of three criminal history points for these two convictions for reasons set forth in detail in their attached letter, including case law.
>
> The probation office continues to believe these convictions were scored accurately and therefore, no changes were made, and this is a matter for the Court to resolve. If the Court rules in favor of defense counsel, the defendant's criminal history category would reduce from a category IV to I, and a guideline range from 57-71 months to 37-46 months imprisonment.

**1)**    **A Criminal History Category Of IV Is Inflated By Mr. Shamblin's 2012 *Boyd* Offense So A Downward Departure Under USSG § 4A1.3 Is Warranted.**

The PSR assigns Mr. Shamblin 7 points for criminal history putting him in Category IV.

(PSR, ¶ 49).  But this inflates Mr. Shamblin's true criminal history score.

Under the recent Oregon Supreme Court *Hubble* decision it is now clear that Mr.

Shamblin's 2012 conviction for a so-called "*Boyd* delivery" was in error. (*See*, PSR ¶ 47). *Oregon*

*v. Hubbell*, 371 Or. 340, SC S069092 (Or. Oct 05, 2023); *see also*, *State v. Hubbell*, 314 Or App

844, 500 P3d 728 (2021), *rev allowed*, 369 Or 504 (2022).  This legal error extends to Mr.

Shamblin even beyond the issue of career offender enhancement.

Rather than being sentenced as he was for the completed crime of delivery Mr. Shamblin

should instead have been sentenced only for the *inchoate* crime of attempt pursuant to the recent

*Hubble* ruling. *Hubble* at 343, fn. 1; 363 ("… defendant's conviction for inchoate attempt and that

[…] is the conviction that the trial court would have entered but for *Boyd* …").  Had Mr. Shamblin

been so sentenced, then instead of a 24-month imprisonment sentence he would have been

sentenced to less than one year, which would receive at worst only 2 points for federal criminal

history calculations purposes – or he could even have been sentenced for mere probation or 60 days or less of prison, in which case this offense would only count for 1 point.   But, crucially, in *either* case Mr. Shamblin would go from a 7-point score resulting in category IV to a 5 or 6 point score resulting in Category III.  Assigning Mr. Shamblin a Category IV criminal history, therefore, is thus inflated.

As such, this is grounds for a downward departure to Mr. Shamblin's criminal history category under USSG § 4A1.3(b) because the *Hubbell* ruling constitutes "reliable information" that the assigned category overrepresents the seriousness of Mr. Shamblin's criminal history.[5]

Notably, this is true even if this Court were to (albeit wrongly) find Mr. Shamblin a career offender.  That is so because, first, 4A1.3(b)(3)(A) explicitly recognizes a downward departure for career offenders (albeit limited to one category), and second because several courts, including the 9th Circuit, have upheld downward departures pursuant to 4A1.3(b) in the case of career offenders. *See*, *U.S. v. Reyes*, 8 F.3d 1379 (9th Cir. 1993); *U.S. v. Lindia*, 82 F.2d 1154, 1164 (1st Cir. 1996); *U.S. v. Webb*, 139 F.3d 1390 (11th Cir. 1998).

### 2)    A Criminal History Category Of IV Is Also Inflated By A Delay In Sentencing Mr. Shamblin's 2004 Offense That He Did Not Cause.

A separate way the PSR inflates Mr. Shamblin's criminal history score is by counting his 2004 conviction to add 3 points. (*See*, PSR ¶ 46).  That is error because despite the fact that the offense in that conviction was charged in August of 2004 (for conduct that occurred in May of 2004) – it was not adjudicated until much later, May of 2008.

---

[5] Nor is it a violation the Plea Agreement to request this because Mr. Shamblin agreed not to seek a "downward departure or adjustment to the advisory sentencing guideline range …" but not the criminal history category. (ECG 85, ¶ 11).

It is acknowledged that the applicable time period is the fifteen-year rule in USSG § 4A1.2(e)(1). Hence, because the earliest relevant conduct on Mr. Shamblin's instant offense is November 11, 2020 (under Count 1), the 15-year period starts November 11, 2005. So technically the offense falls within the 15-year period but that is only because of the lengthy delay in the case coming to a resolution. What is material is that had the case been resolved in a timely manner then the conviction and imposition of sentence would have occurred *before* the start of the 15-year period.

Notably the reason for this delay was not the fault of Mr. Shamblin but rather it was due to him being represented by three different attorneys. According to Mr. Shamblin, his first two attorneys did not work diligently on his behalf and not until he ultimately had counsel in August of 2006 was he effectively represented. The docket supports this succession of representation as one attorney was substituted for original counsel on February 18, 2005 (right after a change of plea hearing was scheduled) and another on August 10, 2006. (Case No. 6:04-cr-60064-AA, at ECF 10, 11, 12, 43). Over the course of the next 16 months, until substitute counsel arrived, the change of plea hearing was scheduled and rescheduled multiple times. (*Id.*, at ECF 22, 25, 27, 31, 34, 41).

Accordingly, the 2004 offense should not count toward Mr. Shamblin's criminal history score, which would reduce it by an *additional* three (3) points.

So, added to a reduction for the *Boyd* delivery (and assuming no career offender enhancement), then Mr. Shamblin's adjusted criminal history point score falls from 7 to 2, landing him in Category II for a range of 41-51 months at the adjusted Offense Level of 21.

**C)    Section 3553(a) Factors And Mitigation-Grounds For A Downward Variance:**

**1)    Mr. Shamblin Is A Single Parent Of A Young Child Born After His Offense And Imprisonment Inevitably Harms His Child.**

As further detailed in the Supplement and acknowledged in the PSR, Mr. Shamblin has a

3-year-old son born just after his offense that he has (verified) sole custody over. (PSR, ¶ 62).

Under § 3553(a)(1) and (2) this fact is grounds to vary downward in order to avoid harm to the innocent child – and to take advantage of the most natural affection of a father for his child – in order promote the rehabilitation of Mr. Shamblin and thereby lower the risk of recidivism so in turn to protect the public. *See e.g.*, Judge Alex Kozinski, *Criminal Law 2.0*, 44 Geo. L.J. Ann. Rev. Crim. Proc. (2015) at page xii-xiii ("Long sentences are also immensely hard on prisoners and cruel to their families, as it's usually very difficult for a prisoner to re-integrate into his family and community after very long prison sentences."); *U.S. v. Pauley*, 511 F.3d 468 (4th Cir. 2007) (court's downward variance affirmed in part because defendant "is a good parent" which is a "valid consideration under § 3553(a)"); *U.S. v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006) (no abuse of discretion for district court to depart 8 levels to probation in part because of unusual family circumstances); *U.S. v. Chambers*, 885 F.Supp. 12, 14 (D.D.C. 1995) (single mother; incarcerating defendant would deprived children of sole parent "… causing needless suffering of young, innocent children does not promote the ends of justice"); *Economic Perspectives On Incarceration And The Criminal Justice System* (April, 2016), Executive Summary at p. 5 ("Parental incarceration is a strong risk factor for a number of adverse outcomes, including antisocial and violent behavior, mental health problems, school dropout, and unemployment.").[6]; *U.S. v. Olis*, 03 Cr. 217 (SL), 2006 WL 2716048, at *13 (S.D. Tex. Sept. 22, 2006) (granting significant downward variance where the "need to provide support for his family will provide adequate deterrence against any potential future criminal conduct").

---

[6] https://www.whitehouse.gov/sites/default/files/page/files/20160423_cea_incarceration_criminal_justice.pdf

2) **Mr. Shamblin's History Of Mental Health Issues And Substance Abuse Contributed To His Offense But Are Subject To Remedies That Lower His Recidivist Risk.**

As indicated in the PSR and in the Supplement, Mr. Shamblin has suffered from addiction to controlled substances combined with mental health afflictions his whole life. (PSR, ¶¶ 68-69, 73-76).

Both these afflictions are typically (though not always) coincidental to illegal substance abuse – yet both can be treated. *See*, 5H1.4 ("[s]ubstance abuse is highly correlated to an increased propensity to commit crime" and noting that in addiction while "ordinarily" and reason for downward departure by implication it can be). But even if the Guidelines preclude downward departure because of voluntary use of drugs that does not legally inhibit a sentencing court from using the same as a mitigating factor under § 3553(a). *See e.g., U.S. v. Garcia*, 497 F.3d 964 (9th Cir. 2007). As supported further in the Supplement, it is submitted to this Court that Mr. Shamblin's afflictions contributed to his offense and further that treatment will lessen the need for imprisonment.

3) **Mr. Shamblin Enjoys Strong Family Support That Will Promote His Rehabilitation And Lower His Risk Of Recidivism.**

As noted in the PSR, Mr. Shamblin enjoys strong family support, which includes immediate family with which he and his son is housed. (PSR, ¶¶ 58, 63). This extended family support lowers Mr. Shamblin's risk of recidivism so constitutes a recognized basis for mitigation. *See e.g.*, *U.S. v. Sayad*, 589 F.3d 1110 (10th Cir. 2009) (sentence of probation is reasonable in drug trafficking case part because, strong family support aids rehabilitation); *U.S. v. Wachowiak*, 412 F.Supp.2d 958 (E.D. Wisc. 2006) aff'd 496 F.3d 744 (7th Cir. 2097) (below guidelines sentence where "strong family support defendant enjoyed"); *U.S. v. Smith* (4th Cir. April 22, 2008) 2008 WL 1816564 (unpub.) (24 month sentence where defendant had "strong family ties").

**4)      The Government's Recommendation Is Greater Than Is Necessary.**

Notably, the PSR recommends a sentence lower than the government does, which adds an experienced probation officer's views to suggest that the government's recommendation is greater than is necessary to satisfy the purposes of sentencing. *See e.g., U.S. v. Willis*, 479 F.Supp.2d 927 (E.D.Wis. 2007) (lower sentence was "consistent with the recommendation made by the experienced probation officer").

Indeed, on the facts of this case and this defendant, there are further grounds to mitigate a sentence below the government's recommendation.  Mr. Shamblin is primarily a self-medicating addict who retailed low quantities of drugs to support his life-long history of substance abuse. (PSR, ¶¶ 73-76).  Yet in this case law enforcement set up no less than *five serial controlled buys*, in a short two-month period, all with the same confidential informant and Mr. Shamblin. (PSR, ¶ 5).  Under such circumstances this amounts to aggressive encouragement that while even if not entrapment (or even bad faith), strongly suggest that the government's recommendation to this Court now is far above what is necessary to satisfy the purposes of sentencing. *See e.g., U.S. v. Garza-Juarez,* 992 F.2d 896, 910-912 & n. 2 (9th Cir. 1993); *U.S. v. McClelland,* 72 F.3d 717 (9th Cir. 1995) (district court properly departs downward 6 levels for imperfect entrapment under §5K2.12 even though D initiated plan); *U.S. v. Searcy*, 233 F.3d 1096, 1099 (8th Cir. 2000) (finding "… the Sentencing Guidelines have a terrifying capacity for escalation of a defendant's sentence as a result of government misconduct").

**5)      A Straight-Jacket Approach To Applying The Guidelines Leads To Over Punishment In This Particular Case.**

The PSR recommendation makes a straight application of the guidelines, which though lower than the government's recommendation and at the low end of the calculated range, still leads to over punishment.  Aside from the disputed issue of the criminal history score, the PSR is

concededly on 'all fours' in its calculation of a guideline offense level but therein lies another issue for this Court because this defendant is a non-violent, controlled substance abuser. A sentence of nearly five years is simply more than is needed for this drug offense and this defendant. *See e.g., U.S. v. Diaz*, 2013 WL 322243 (E.D.N.Y.) (unpub.) (January 28, 2013) (Gleeson, J) (court considers guidelines but places "almost no weight" on them because "the Guidelines ranges for drug trafficking offenses are not based on empirical data, Commission expertise, or the actual culpability of defendants. If they were, they would be much less severe, and judges would respect them more. Instead, they are driven by drug type and quantity, which are poor proxies for culpability."); *U.S. v. Dossie*, 851 F.Supp.2d 478, 483 (E.D.N.Y. 2012) ("the drug-offense Guidelines ranges are excessively severe. In formulating those ranges, the Commission decided to jettison its pre- Guidelines data and instead chose to make the sentencing range in every single drug case proportional to the onerous mandatory sentences meant only for leaders and managers").

> 6) **Left Unadjusted, Inflated PSR Criminal History Categorization Is Grounds For A Downward Variance.**

Finally, if the Court does not vary the criminal history score as requested herein (*supra* V B and C) then it is requested that the Court impose a lesser sentence than such categorization would call for because the PSR-determined criminal history category overstates Mr. Shamblin's actual past conduct or propensity to commit crimes. *See e.g.*, *U.S. v. Robertson*, 662 F.3d 871 (7th Cir. 2011) ("Sentencing policy recognizes that a within-guidelines sentence may be inappropriately high when reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."; *U.S. v. Cuevas-Gomez*, 61 F.3d 749 (9th Cir. 1995) (district court may depart downward if court believes criminal history overstated); *U.S. v. Reyes*, 8 F.3d 1379 (9th Cir. 1993) (same).

## VI. RECOMENDATION.

For all these reasons Mr. Shamblin respectfully requests that this Court sentence him as follows:

i) To time served unless this Court would impose additional imprisonment, then, in the *alternative*, to a sentence in the range of one (1) to twenty-four (24) months; and

ii) Regardless of the term of imprisonment, a term of supervised release of three (3) years; and

iii) Waive any fine imposed; and

iv) That for any term of imprisonment imposed, the Court allow self-surrender 60-90 days after sentencing (*See* PSR, p. 2); and

vi) That if imprisonment is imposed the Court recommend to the Bureau of Prisons: a) that Mr. Shamblin be incarcerated in the district of Oregon; and b) he is given full credit for time served; and c) that he be afforded drug treatment pursuant to 18 U.S.C. § 3621.

RESPECTFULLY SUBMITTED this 27th day of November 2023.

/s/ *Nicholas Granath*
Nicholas Paul Granath, OSB #180295
Attorney for Defendant
Earl Richard Shamblin

**List of Exhibits:**

Exhibit 1 ["Judgment of Conviction and Sentence" of November 15, 2012]

Exhibit 2 ["Probable Cause Affidavit" of March 12, 2012]

Exhibit 3 ["Medford Police Report" of March 20, 2012].

Exhibit 4 [ORS § 475.890 (2011)]

Exhibit 5 [ORS § 475.005(8) (2011)]

Exhibit 6 [ORS § 161.405(1) (2011)]

Exhibit 7 ["Petition For Post Conviction Relief" filed 8 June 2023]